**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 26-10275-357 |
| **TURNAGE FARMS,** | ) | Chapter 12 |
| | ) | |
| Debtor. | ) | |

**PLAN OF ADJUSTMENT OF DEBTS**
**OF A FAMILY FARMER WITH REGULAR INCOME**

Debtor, Turnage Farms, a Missouri general partnership, pursuant to § 1221 of Title 11 of the United States Code, proposes the following Plan of Adjustment of Debts of a Family Farmer with Regular Income (the "Plan"). Debtor filed its Chapter 12 bankruptcy petition and schedules (Case No. 26-10275) on April 22, 2026 (the "Petition Date").

**DEFINITIONS**

The following terms when used in this Plan shall, unless the context otherwise requires, have the following meanings.

"Bankruptcy Code": Title 11 of the United States Code.

"Chapter 12": Chapter 12 of the Bankruptcy Code.

"Court": The United States Bankruptcy Court for the Eastern District of Missouri.

"Confirmation": The entry by this Court of a final and non-appealable order confirming the Plan in accordance with Chapter 12 of the Bankruptcy Code.

"Debtor" or "Debtors": The debtor(s) listed in the caption above.

"Effective Date": The date of entry by this Court of a final and non-appealable order approving and confirming Debtor's Chapter 12 Plan.

## ARTICLE I
## EARNINGS SUBMITTED FOR EXECUTION OF THE PLAN

Debtor's plan is to continue to conduct a row crop operation. Debtor is a Missouri general partnership that farms approximately 7,300 row crop acres in Southeast Missouri. Debtor's net income, after deducting the payments required under the Plan to creditors and to the Chapter 12 Trustee ("Trustee") is sufficient to fund this Plan.

The Debtor shall be entitled to retain up to $336,000 annually after payment of its plan payments, taxes, and administrative expenses to assist with putting in the following year's crop. This $336,000 will not be included as net disposable income for purposes of calculations of distributions to unsecured creditors. This $336,000 is calculated as 10% of the Debtor's projected Farm Expenses as provided in Exhibit A and is necessary for the continuation, preservation, and operation of the Debtor's business from one year to the next. This provision is further explained in Article 4.4.

Any excess net disposable income after the deductions set forth above of the Debtor shall be paid to the Trustee for distribution to unsecured creditors. The Debtor's Income and Expense Projections are summarized on Exhibit A attached to the Plan. The Debtor's Liquidation Analysis is summarized on Exhibit B attached to the Plan. The Debtor's Hypothetical Ch. 7 Income Tax Calculation is summarized on Exhibit C attached to the Plan. A summary of the July 27, 2026 DeWitt appraisal of the Debtor's equipment is attached as Exhibit D and includes identification of equipment with a Purchase Money Security Interest ("PMSI") and the claim identifying the PMSI. The entirety of the appraisal includes many pictures and is too voluminous to attach but may be made available upon request to Debtor's attorneys.

## ARTICLE II
## PRIORITY CLAIMS

**2.1 Trustee Fees.** The Trustee shall receive as compensation for his services a base fee of $1,500.00 annually (due and payable July 15 of each Plan year), in addition to five percent (5%) of payments from Debtor payable to the Trustee at the time payments are made to unsecured creditors, plus reasonable attorney fees and expenses allowed by the Court, pursuant to § 326(b) of the Bankruptcy Code and L.R. 2016-4. Said percentage fee shall also apply to payments made by the Trustee to Debtor's attorneys for payment of attorney fees and expenses. Said percentage fee shall not apply to payments made by Debtor directly to creditors. Post-petition farming payments both accruing and made post-petition, including landlord lease payments and repayment of any crop input liens both accruing and made post-petition, are not subject to a Trustee fee.

**2.2 Other Priority Claims.** Debtor is aware of the following priority claims:

a. **The Department of the Treasury – Internal Revenue Service ("IRS")** filed a claim including employment taxes for 2026 totaling $1,542.60. This claim has been paid post-Petition Date and the IRS has $0.00 remaining priority claim.

b. The balance due on Debtor's attorney fees. There was a $6,431.00 Retainer remaining at the Petition Date having been paid by Debtor.

**2.3 Treatment of Priority Claims.**

a. Attorney fees will be paid directly by Debtor within thirty (30) days of approval by the Court, unless Debtor and Debtor's attorney agree to payment on a different schedule. The Trustee is also authorized to pay allowed attorney fee administrative claims from funds held by

the Trustee, if any. When Debtor's attorney fees are paid by the Trustee, the Trustee's percentage fee shall apply to these payments.

b. The attorney fees incurred by the Trustee in this matter are unknown at this time. Said fees shall be paid within thirty (30) days of the date on which the Court approves the application for allowance and payment of those fees, unless the parties agree otherwise.

**2.4** **<u>De-prioritized Claims of Governmental Units.</u>** Pursuant to 11 U.S.C. §1232, if a priority unsecured claim owed to a governmental unit arises as a result of the sale, transfer, exchange, or other disposition of any property used in the Debtor's farming operation, then that claim shall be treated and de-prioritized as an unsecured claim. This includes the potential income taxes due to the sales of Debtor's farm equipment, vehicles, or trailers, and capital gains taxes due to the sales of Debtor's farm land subsequent to the Petition Date and prior to discharge of this case.

Debtor shall provide notice, and any governmental unit shall be allowed to file a claim in response to such notice, each in accordance with 11 U.S.C. § 1232(d) for all claims which may arise, if any, as a result of this Article. If notice is required in accordance with 11 U.S.C. § 1232(d) said notice shall be sent to the following addresses: United States Attorney's Office c/o Bankruptcy Litigation Coordinator, 111 S. 10th Street, Suite 20.333, St. Louis, MO 63102; Internal Revenue Service, 1222 Spruce St, M/S 5334 StL, St. Louis, Mo 63103; Internal Revenue Service, P.O. Box 7346, Philadelphia, PA 19101.

**2.5 Treatment of Claims of Governmental Units as Unsecured Claims Pursuant to 11 U.S.C. §1232.**

**Post-Petition Sales Provision**

Debtor may owe claims to the United States of America through the Internal Revenue Service and the State of Missouri through the Missouri Department of Revenue for income taxes arising because of their disposition of farm assets used in farming after the Petition Date, including after the filing and/or confirmation of this Plan. These tax claims that qualify for treatment under 11 U.S.C. §1232 shall be treated as unsecured claims and de-prioritized, and shall be equal to that amount of tax resulting on the income tax return as if the taxable income for the sale, exchange, transfer or other disposition of the farming asset will be excluded from that tax return, and from the tax resulting if that taxable income was excluded on Debtor's return. The computation of claim amount subject to unsecured treatment and de-prioritization described in the preceding sentence is known as the marginal method approved by the Court in *In re Knudsen*, 581 F. 3d 696 (8th Cir. 2009), in interpreting 11 U.S.C. §1222(a)(2)(A), the predecessor of §1232, which had the same Congressional goal to de-prioritize unsecured claims of a governmental unit arising from the sale of farm assets used in Debtor's farming operation and treating them as unsecured claims.

The computations under the marginal method are employed by comparison of Debtor's income tax returns and a *pro forma* income tax return for the applicable tax year. The *pro forma* return is not a true tax return, but instead an analytical tool to determine, first, how much tax was generated by the sale, exchange, transfer, or other disposition of the farming assets that can be classified and treated as an unsecured claim pursuant to 11 U.S.C. §1232, and second, to determine the amount of tax that should be treated as priority tax that will be paid in full pursuant to the Plan.

The calculation of the tax claims of the IRS and Missouri Department of Revenue qualifying for this classification and treatment as unsecured claims pursuant to 11 U.S.C. §1232 due to the disposition of the farm assets used in Debtor's farming operation contemplated by this plan that will occur is set forth below:

| **Return** | | **Federal** | **Missouri** |
|---|---|---|---|
| 2026 Traditional Return | | $ | $ |
| 2026 (*pro forma* return) | minus | $ | $ |
| §1232 Dischargeable Tax | | | |

**Pre-Petition Sales Provision**

Debtor is not aware of any dispositions of some of their farm assets in tax years before filing this Chapter 12 bankruptcy that qualify for de-prioritization under §1232. If Debtor becomes aware of any such dispositions, the calculation of taxes qualifying for de-prioritization under §1232 for those tax years will be as follows:

| **Return** | | **Federal** | **Missouri** |
|---|---|---|---|
| 2025 | | $ | $ |
| 2025 (*pro forma*) | minus | $ | $ |
| §1232 Dischargeable Tax | | $ | $ |
| | plus any penalties and interest | | plus any penalties and interest |

The treatment for unsecured claims (the §1232 claims) is set forth in Article 4.3 below and shall only be discharged when Debtor receives its discharge. The priority tax claims as shown on the *pro forma* tax returns, if any, are administrative tax claims that shall be paid in the ordinary course of business by Debtor when it files its income tax returns. The claims in this class are impaired.

## ARTICLE III
## SECURED CLAIMS

**3.1** **Treatment of Secured Claims.** Debtor believes that the value, as of the effective date of the Plan, of property to be distributed by the Trustee or Debtor under the Plan on account of each allowed secured claim, is not less than the allowed amount of such claim.

**3.2** **First State Bank & Trust Co. Inc. ("FSBT")** is a secured creditor with debts secured by three Deeds of Trust on multiple tracts of farmland, PMSIs on certain farm equipment, a blanket lien on equipment and crops, and the personal guarantee of the partners of the Debtor. FSBT filed six secured claims totaling $5,638,826.17, with interest rates ranging from 4.375% to 8.75%. Debtor will pay these aggregate debts as outlined herein. All other terms of these notes, not modified herein, shall remain in full force and effect.

**Farmland:**

FSBT Claims 3, 6, and 7 (the "FSBT Land Claims") represent three separate notes and Deeds of Trust on multiple tracts of farmland. FSBT Claim 7 is also secured by a blanket lien on the equipment. The most recent appraisal of the several tracts of land is the Keefer appraisal dated March 5, 2025 and ordered on behalf of FSBT. The Keefer appraisal values all properties that are collateral to the FSBT Land Claims at a total of $3,180,000.00. Debtor's information shows that FSBT is under-secured. This debt is being treated as under-secured. Debtor will pay these aggregate debts as outlined herein. All other terms of these notes, not modified herein, shall remain in full force and effect.

The claims of FSBT shall be modified to pay the fair market value of the collateral, being $3,180,000.00, at the interest rate of 7.50%, which begins to run as of the Effective Date, and on a 20-year amortization, with the first payment to be made on February 15, 2027, and a like amount

on February 15 of each subsequent year for nineteen additional years, which is an annual payment in the amount of $299,291.27. The last payment shall pay the unpaid interest and principal. These amounts will be adjusted for other payments made to FSBT not allowed for herein, and other allowable additions or subtractions to arrive at the exact amount to be amortized. FSBT's attorney fees are not recoverable since its loans are under-secured.

**Crop & Equipment:**

FSBT Claims 4, 5, 7, and 8 (the "FSBT Equipment Claims") represent PMSIs on certain pieces of equipment and a blanket lien on all equipment and any proceeds related to the Debtor's 2025 or prior crops. Debtor has made payments on this debt post-petition with the proceeds from the 2025 crop and anticipates a total of approximately $310,000.00 to be made from the proceeds of the 2025 crop. The remaining debt associated with the FSBT Equipment Claims after reduction of payments via the FSBT Land Claims and the expected 2025 crop proceeds is $2,148,826.17. According to Debtor's Schedule A/B and subtracting applicable PMSI's, the value of the equipment collateral to FSBT is $1,729,600.00. Debtor's information shows that FSBT is under-secured. This debt is being treated as under-secured.

FSBT Equipment Claims shall be modified to pay the fair market value of the collateral, being $1,729,600.00, at the interest rate of 8.50%, which begins to run as of the Effective Date, and on a 5-year amortization, with the first payment to be made on February 15, 2027, and a like amount on February 15 of each subsequent year for four additional years, which is an annual payment in the amount of $413,114.87. The last payment shall pay the unpaid interest and principal. These amounts will be adjusted for other payments made to FSBT not allowed for herein, and other allowable additions or subtractions to arrive at the exact amount to be amortized. FSBT's attorney fees are not recoverable since its loans are under-secured.

**Applicable to all FSBT Claims, Loans, and Deeds of Trust:**

The FSBT loan documents will remain in full force and effect, except as modified by this Plan. FSBT shall not be allowed its attorney fees post-Petition Date. FSBT shall not be allowed any interest accrual after the Petition Date and prior to the Effective Date. FSBT shall retain its liens on the subject collateral until the secured indebtedness is paid in full, except as ordered by the Court with jurisdiction over this case or by agreement between the parties. Debtor shall maintain insurance naming FSBT as a loss payee to the extent or greater of the recited value against all peril, loss and theft with the current policy or evidence of such insurance at all times while an indebtedness with FSBT exists. Debtor shall maintain the collateral in a condition satisfactory to FSBT and shall permit inspection of the collateral within two (2) business days of such a request.

Upon default of any payment or agreement or obligation of Debtor in favor of FSBT, whether contained in the Plan or in the original loan documents, FSBT shall file a notice of default with the Court, set the matter for hearing, and serve the notice on the Trustee, Debtor, and the attorney for Debtor.

**3.3** **Deere & Company d/b/a John Deere Financial ("JDF")** is a secured creditor with debts secured by several PMSIs on various farm equipment and the guarantee of the Debtor. JDF filed twelve (12) secured claims representing twelve (12) secured loans totaling $4,703,443.24, with interest rates ranging from 2.90% to 6.35%. The loans of JDF are cross-collateralized such that all collateral of JDF secures all JDF notes. Debtor has recently obtained an appraisal of the Debtor's equipment (summary attached as Exhibit D) and determined the fair market value of JDF's collateral to be $4,165,000.00. Debtor's information shows that JDF is under-secured. This debt is being treated as under-secured. Debtor will pay these aggregate debts

as outlined herein. All other terms of these notes, not modified herein, shall remain in full force and effect.

The claims of JDF shall be modified to pay the fair market value of the collateral, being $4,165,000.00, at the interest rate of 8.50%, which begins to run as of the Effective Date, and on a 5-year amortization, with the first payment to be made on February 15, 2027, and a like amount on February 15 of each subsequent year for four additional years, which is an annual payment in the amount of $994,810.02. The last payment shall pay the unpaid interest and principal. These amounts will be adjusted for other payments made to JDF not allowed for herein, and other allowable additions or subtractions to arrive at the exact amount to be amortized. JDF's attorney fees are not recoverable since its loans are under-secured.

The JDF loan documents will remain in full force and effect, except as modified by this Plan. JDF shall not be allowed its attorney fees post-Petition Date. JDF shall not be allowed any interest accrual after the Petition Date and prior to the Effective Date. JDF shall retain its liens on the subject collateral until the secured indebtedness is paid in full, except as ordered by the Court with jurisdiction over this case or by agreement between the parties. Debtor shall maintain insurance naming JDF as a loss payee to the extent or greater of the recited value against all peril, loss and theft with the current policy or evidence of such insurance at all times while an indebtedness with JDF exists. Debtor shall maintain the collateral in a condition satisfactory to JDF and shall permit inspection of the collateral within two (2) business days of such a request.

Upon default of any payment or agreement or obligation of Debtor in favor of JDF, whether contained in the Plan or in the original loan documents, JDF shall file a notice of default with the Court, set the matter for hearing, and serve the notice on the Trustee, Debtor, and the attorney for Debtor.

**3.4** **The Huntington National Bank ("HNB")** is a secured creditor with debts secured by two PMSIs on two 2024 Liquid Fertilizer Applicators and the guarantee of the Debtor. HNB filed one (1) secured claim representing one (1) secured loan with a balance of $194,641.06, with interest rate 8.50%. Debtor has recently obtained an appraisal of the Debtor's equipment (summary attached as Exhibit D) and determined the fair market value of HNB's collateral to be $75,000.00. Debtor's information shows that HNB is under-secured. This debt is being treated as under-secured. Debtor will pay these aggregate debts as outlined herein. All other terms of these notes, not modified herein, shall remain in full force and effect.

The claims of HNB shall be modified to pay the fair market value of the collateral, being $75,000.00, at the interest rate of 8.50%, which begins to run as of the Effective Date, and on a 5-year amortization, with the first payment to be made on February 15, 2027, and a like amount on February 15 of each subsequent year for four additional years, which is an annual payment in the amount of $17,913.74. The last payment shall pay the unpaid interest and principal. These amounts will be adjusted for other payments made to HNB not allowed for herein, and other allowable additions or subtractions to arrive at the exact amount to be amortized. HNB's attorney fees are not recoverable since its loans are under-secured.

The HNB loan documents will remain in full force and effect, except as modified by this Plan. HNB shall not be allowed its attorney fees post-Petition Date. HNB shall not be allowed any interest accrual after the Petition Date and prior to the Effective Date. HNB shall retain its liens on the subject collateral until the secured indebtedness is paid in full, except as ordered by the Court with jurisdiction over this case or by agreement between the parties. Debtor shall maintain insurance naming HNB as a loss payee to the extent or greater of the recited value against all peril, loss and theft with the current policy or evidence of such insurance at all times while an

indebtedness with HNB exists. Debtor shall maintain the collateral in a condition satisfactory to HNB and shall permit inspection of the collateral within two (2) business days of such a request.

Upon default of any payment or agreement or obligation of Debtor in favor of HNB, whether contained in the Plan or in the original loan documents, HNB shall file a notice of default with the Court, set the matter for hearing, and serve the notice on the Trustee, Debtor, and the attorney for Debtor.

**3.5** **Farm Credit Services of America, PCA ("AgDirect")** is a secured creditor with debts secured by PMSIs on certain farm equipment and the guarantee of the Debtor. AgDirect did not file a claim. Debtor's information shows that AgDirect is fully secured. This debt is being treated as fully secured. Debtor will pay this debt as outlined herein. All other terms of the note, not modified herein, shall remain in full force and effect.

AgDirect shall be paid directly by Debtor at the estimated balance of $12,825.00, at the interest rate of 6.00%, which begins to run from the filing of the bankruptcy case, and on a 2-year amortization, with the first payment to be made on February 15, 2027, and a like amount on February 15, 2028, which is an annual payment in the amount of $6,933.66. The last payment shall pay the unpaid interest and principal. These amounts will be adjusted for other payments made to AgDirect not allowed for herein, attorney fees, and other allowable additions or subtractions in order to arrive at the exact amount to be amortized.

The AgDirect loan documents will remain in full force and effect, except as modified by this Plan. AgDirect will be allowed its attorney fees and pre-petition interest on its claims. AgDirect shall retain its liens on the subject collateral until the secured indebtedness is paid in full, except as ordered by the Court with jurisdiction over this case or by agreement between the parties. Debtor shall maintain insurance naming AgDirect as a loss payee to the extent or greater of the recited value against all peril, loss and theft with the current policy or evidence of such insurance

at all times while an indebtedness with AgDirect exists. Debtor shall maintain the collateral in a condition satisfactory to AgDirect and shall permit inspection of the collateral within two (2) business days of such a request.

Upon default of any payment or agreement or obligation of Debtor in favor of AgDirect, whether contained in the Plan or in the original loan documents, AgDirect shall file a notice of default with the Court, set the matter for hearing, and serve the notice on the Trustee, Debtor, and the attorney for Debtor.

**3.6** **CNH Industrial Capital America, LLC ("CNH")** was listed as a secured creditor in Debtor's Schedule D. CNH did not file a secured claim. Upon information and belief obtained via discussion with CNH and review of the CNH contracts, the debt listed in Debtor's Schedule D is the personal debt of Patrick Turnage, not that of the Debtor Turnage Farms. Therefore, CNH no longer has a secured lien on any property of the Debtor. The Debtor's Schedules will soon be amended in accordance with this statement.

## ARTICLE IV
## UNSECURED CLAIMS

**4.1** **Accrued Chapter 12 Attorney Fees.** Debtor has inserted in the Liquidation Analysis attached as Exhibit B an estimate of $30,000.00 in accrued attorney fees as of the Effective Date of the Plan. Approved attorney fees cannot be known as of the writing of this plan due to the nature of the bankruptcy process and the unknown nature of the Effective Date or what issues may arise before the Effective Date. As such, Debtor estimates its unpaid, accrued attorney fees as of the Effective Date of the Plan to be $30,000.00 and has used such number in calculating the net available to general unsecured creditors as of the Effective Date of the Plan. Debtor shall re-calculate the net available to general unsecured creditors as of the Effective Date upon

satisfaction of the following two conditions: 1) an Order Granting Motion to Confirm Debtor's Chapter 12 Plan and 2) Order(s) Approving Attorney Fees and Expenses in which all incurred attorney fees and expenses between the Petition Date and Effective Date have been either approved or denied. Upon satisfaction of these two conditions, Debtor and Trustee shall re-calculate the net available to general unsecured creditors using the exact amount of attorney fees and expenses for which satisfy the following three conditions: 1) approval of the bankruptcy court, 2) incurred on or prior to the Effective Date of the Plan, and 3) had not already been paid by the Debtor or Trustee as of the Effective Date of the Plan.

**4.2** **In General.** The Debtor believes it had approximately $134,634.82 equity in its property as of the Effective Date. As of October 20, 2026, the Trustee holds $0.00 of Debtor's funds. Debtor does not plan to sell any property from which the Trustee would receive funds post-Effective Date.

The Debtor will submit net disposable income, as set forth in Article I and further described in Article 4.4, to be paid annually to the Trustee for pro-rata distribution to creditors based on the unsecured claims filed. Debtor guarantees to the general unsecured creditors over the life of the Plan that there will be $134,634.82, if the unpaid, accrued attorney fees prior to the Effective Date of the Plan equal $30,000.00. If the said attorney fees are less than $30,000.00, the guarantee to unsecured creditors shall increase by the amount that the attorney fees are less than $30,000.00. If the said attorney fees exceed $30,000.00, the guarantee to unsecured creditors shall decrease by the amount that the attorney fees exceed $30,000.00 (the "Guaranteed Amount").

Upon calculation of attorney fees as described in Article 4.1, Debtor and Trustee shall calculate the final and actual net amount due to the general unsecured creditors (i.e. the Guaranteed

Amount). The Debtor shall prepare and file its annual tax returns, providing a copy to the Trustee, and shall file quarterly reports with the Trustee in a form substantially similar to that required in the U.S. Trustee Chapter 12 Handbook, so that the Trustee will be provided with an adequate accounting of the net disposable income.

**4.3** **<u>Distributions to Unsecured Creditors.</u>** The unsecured claims shall include, without limitation, the unsecured portion (if any) of the claims in Article 2.5, and the unsecured portion (if any) of the claims in Article III. All unsecured claims shall be paid pro-rata from the payments made by the Debtor to the Chapter 12 Trustee.

At each disbursement event, and consistent with 11 U.S.C. § 1229(a)(4), Debtor hereby requests the Chapter 12 Trustee annually re-calculate the pro-rata distributions as of January 1 of each year to account for any §1232 claims which may have been properly filed. The Chapter 12 Trustee shall distribute to the general unsecured creditors annually in accordance with the pro-rata shares calculated as of January 1 of the year in which such distribution is being made.

**4.4** **<u>Net Disposable Income Calculation.</u>** To further explain the payment of net disposable income and the retained $336,000 as referenced in Article 1 and Article 4.2, the Trustee shall collect all quarterly reports and determine, as of the end of each Plan year, if there is net disposable income available for distribution to unsecured creditors as the term "disposable income" is defined in 11 U.S.C. § 1225(b)(2) and all applicable case law. This calculation shall be conducted on a cash basis, from the information provided in the quarterly reports, as of the end of each Plan year. Notwithstanding the cash-basis calculation, the Debtor is allowed to retain up to $336,000.00 each year to be used towards putting in the following year's crop. The amount retained by the Debtor for this purpose is considered necessary for the continuation, preservation,

and operation of the Debtor's business and is therefore not considered disposable income in the year in which it is received. However, the retained income in a given year, except for the final Plan year, shall be accounted for in the calculation of disposable income for the following year, either as an addition to that year's gross income or as a reduction in the actual expenses of planting that year's crop.

## ARTICLE V
## LEASES AND EXECUTORY CONTRACTS

Debtor's leases of farmland are as follows:

| Landlord | Acres | Lease | Balance due |
|---|---|---|---|
| Ashley Wright | 53.58 | Crop Share | |
| Christina Jo Williams | 53.58 | Crop Share | |
| Bob Collins<br>Collins Farms | 144.51 | Crop Share | |
| David Owen Mulchany<br>David Owen Mulchany Living Trust | 97.9 | Crop Share | |
| Eric Petersen | 1,227.45 | Crop Share | |
| Greg Peters | 18.02 | Crop Share | |
| Jeffrey Davis | 36.96 | Crop Share | |
| Kersey Brothers, LLC<br>Keith Rollin Farms, LLC | 378.38 | Cash Rent | |
| Kenneth Keller<br>Rex Keller Jr Rev Trust | 1,174.15 | Crop Share | |
| Brenda Sides | 490.61 | Crop Share | |
| Leslie Sides | 648.65 | Crop Share | |

| | | |
|---|---|---|
| Margaret Sides | 524.3 | Crop Share |
| Pamela Issac | 38.62 | Crop Share |
| John Ferguson<br>Pemiscot County Port Auth. | 231.74 | Cash Rent |
| Rachel Anders<br>John & Ollie Yarbo Irrev. Trust | 1,618.91 | Crop Share |
| Rayburn Whitener | 528.37 | Crop Share |
| Patrick Turnage<br>Sugar Ridge Properties, LLC | 57.59 | Crop Share |
| Teresa Merrell | 87.42 | Crop Share |
| Tommy Cross | 22.71 | Crop Share |
| Gary Hayes<br>Caruthersville Gin, Inc. | 44.97 | Crop Share |

Debtor was current on all lease payments on the date of submission of this Plan. All leases have been paid-in-full for the 2025 crop-year.

Debtor hereby assumes each of these leases. All leases shall continue in effect, and confirmation of this Plan will continue all crop lease arrangements between Debtor and the lessors. The confirmation of this Plan shall not alter the rights of any parties under the law, other than as set forth herein.

All lease payments shall be made directly by Debtor to the respective landlord. There will be no Trustee fee assessed on ground lease payments for farming years 2026 and after since these are not pre-petition debts.

Upon default of any payment or agreement or obligation of Debtor contained herein or in any lease provision, the lessor shall file a notice of default with the Court, set the matter for hearing, and serve the notice on the Trustee, Debtor, and the attorney for Debtor.

## ARTICLE VI
## VESTING OF PROPERTY, PAYMENT METHOD, AND LIEN RETENTION

Except as otherwise provided in the Plan, the property of the estate shall vest in Debtor upon confirmation of the Plan.

All payments are to be made to the Trustee, except where the Plan provides for direct payment by Debtor, through the life of the Plan.

All secured creditors shall retain their liens to the extent of the value of the collateral pledged as security, except as provided for in this Plan.

## ARTICLE VII
## CONTINUED OPERATION

Debtor anticipates that it will be necessary to obtain additional crop input financing to conduct their farming operations for crop year 2027 and subsequent years. Debtor will provide notice and the opportunity to be heard to the Trustee, the creditors, and all parties in interest when seeking approval of any financing. A motion to incur secured debt will be filed on notice to all parties in interest so that input financing can be obtained prior to needing the funds. Debtor shall be authorized, upon notice and the opportunity to be heard to all parties, to borrow such funds for farming years 2027 and following years as shall be necessary, on terms as set forth in any motion to incur secured borrowing obligation as shall be filed for those farming years.

Debtor shall be authorized, without notice to the Court, Trustee, or creditors, to participate in all government farm programs and execute all documents necessary to effectuate their participation in said programs. To the extent that the law requires Debtor to assume any government contract in order to receive thereon, such contract is hereby assumed in this Plan. To the extent any such government contract is not executory, in whole or in part, payment due for Debtor's performance is due and payable. Upon confirmation of the Plan, or an order issued by the Court, the payments will be issued in a manner consistent with the governing regulations. During the term of the Plan Debtor shall be authorized to obtain future commodity loans or loan deficiency payments (LDP) from the Commodity Credit Corporation (CCC). Debtor shall be bound by all rules and regulations of each program, and the CCC is empowered to take all actions contemplated by all applicable regulations, including 7 C.F.R. part 1421, without further order of this Court.

Confirmation of this Plan authorizes Debtor to participate in and receive benefits of all government programs which are available to them. These include all disaster, L.D.P., and other similar farm program payments. No separate application or order of the court shall be required for Debtor to participate in any government programs. All government program payments will be made only to Debtor and will not be made to the Trustee, unless a separate order shall be entered by the Court subsequent to the order which confirms this Plan.

Debtor shall be authorized to collect all monies due to them and use said collected funds in their Chapter 12 farming operation except as set forth herein. None of said funds shall be required to be turned over to the Trustee unless a separate order of court shall be entered.

## ARTICLE VIII
## DURATION OF PLAN

The Plan payments shall be made for a period of three years, unless Debtor shall submit to the Trustee sufficient funds to pay in full the priority and unsecured claims herein. Should Debtor submit to the Trustee sufficient funds to pay the priority and unsecured claims herein in full, no further payments shall be due to the Trustee, and this Plan shall be completed and this case closed.

## ARTICLE IX
## LIQUIDATION

Debtor does not currently plan to liquidate its property under this Chapter 12 Plan. As such, Debtor has prepared a hypothetical Chapter 7 liquidation analysis, Exhibit B, in accordance with 11 U.S.C § 1225(a)(4). Said liquidation analysis reflects the proposed restructuring of this Plan, as of the Effective Date of this Plan. All property which is intended to be de-prioritized in this Plan is treated as de-prioritized. All property which is not intended to be sold, transferred, exchanged, or otherwise disposed of from the Debtor's farming operation is not treated as de-prioritized. All tax claims are de-prioritized within the hypothetical Chapter 7 liquidation analysis to the same extent that they are de-prioritized in the proposed restructuring of this Plan. Exhibit C is attached as a showing of which property would be liquidated or abandoned in the hypothetical Chapter 7 liquidation analysis and which property is intended to receive de-prioritization in the proposed restructuring of this Plan.

The Debtor submits the hypothetical Chapter 7 liquidation analysis, Exhibit B, is an accurate representation of the Debtor's equity available for its unsecured creditors in the event of a Chapter 7 liquidation as of the Effective Date. Therefore, Debtor guarantees to the unsecured

creditors over the life of the Plan the Guaranteed Amount (defined in Article 4.2), estimated to be $134,634.82.

Turnage Farms, a Missouri General Partnership

By /s/ Patrick Turnage
Patrick Turnage, Partner

Dated: October 19, 2026

Respectfully Submitted,

/s/ Kelvin W. Birk
Kelvin W. Birk, Bar #48274MO
Birk Law Firm, LC
2851 Professional Court, Suite C
Cape Girardeau, MO 63703
Phone: 573-332-8585
Fax: 573-332-0660
E-mail: kbirk@birklegal.com
Attorney for Debtor

Turnage Farms
Income, Expenses and Plan Payments
Chapter 12
26-10275-357

**Exhibit A**

## INCOME

| Calendar Year | 2027 | 2028 | 2029 |
|---|---|---|---|
| **Plan Year** | **1** | **2** | **3** |
| **Farm Income** | | | |
| Retained Income for Farming Operation | $ - | $ 335,536.41 | $ 336,000.00 |
| Cotton (Irr.) - 3,599 ac, $0.85/lb, 1400 lbs/ac mix - owned, cash & crop rent | $ 3,268,640.59 | $ 3,268,640.59 | $ 3,268,640.59 |
| Cotton (Dry) - 2,266 ac, $0.85/lb, 1,200lbs/ac mix - owned, cash & crop rent | $ 1,766,541.88 | $ 1,766,541.88 | $ 1,766,541.88 |
| Soybeans (Dry) - 1451 ac, $12.50/bu, 30 bu/ac, mix - owned, cash & crop rent | $ 424,417.50 | $ 424,417.50 | $ 424,417.50 |
| **TOTAL INCOME** | **$ 5,459,599.97** | **$ 5,795,136.38** | **$ 5,795,599.97** |

## EXPENSES

| Plan Year | 1 | 2 | 3 |
|---|---|---|---|
| **Plan Payments** | | | |
| FSBT land | $ 299,291.27 | $ 299,291.27 | $ 299,291.27 |
| FSBT equipment | $ 413,114.87 | $ 413,114.87 | $ 413,114.87 |
| JDF equipment | $ 994,810.02 | $ 994,810.02 | $ 994,810.02 |
| HNB equipment | $ 17,913.74 | $ 17,913.74 | $ 17,913.74 |
| AgDirect equipment | $ 6,933.66 | $ 6,933.66 | $ - |
| **Total** | **$ 1,732,063.56** | **$ 1,732,063.56** | **$ 1,725,129.90** |
| **Farm Expenses** | | | |
| Interest Expense - ARM & Distributor | $ 150,000.00 | $ 150,000.00 | $ 150,000.00 |
| Cash Rent | $ 129,000.00 | $ 129,000.00 | $ 129,000.00 |
| Chemicals | $ 225,000.00 | $ 225,000.00 | $ 225,000.00 |
| Contingency | $ 250,000.00 | $ 250,000.00 | $ 250,000.00 |
| Custom Services | $ 205,000.00 | $ 205,000.00 | $ 205,000.00 |
| Fertilizer | $ 325,000.00 | $ 325,000.00 | $ 325,000.00 |
| Fuel and Electricity | $ 240,000.00 | $ 240,000.00 | $ 240,000.00 |
| Farm Overhead | $ 250,000.00 | $ 250,000.00 | $ 250,000.00 |
| Equipment Rent | $ 28,000.00 | $ 28,000.00 | $ 28,000.00 |
| Ginning | $ 85,000.00 | $ 85,000.00 | $ 85,000.00 |
| Labor | $ 300,000.00 | $ 300,000.00 | $ 300,000.00 |
| Insurance | $ 150,000.00 | $ 150,000.00 | $ 150,000.00 |
| Repairs | $ 250,000.00 | $ 250,000.00 | $ 250,000.00 |
| Seed | $ 610,000.00 | $ 610,000.00 | $ 610,000.00 |
| Taxes | $ 85,000.00 | $ 85,000.00 | $ 85,000.00 |
| Fees | $ 85,000.00 | $ 85,000.00 | $ 85,000.00 |
| **Total** | **$3,367,000.00** | **$3,367,000.00** | **$3,367,000.00** |

| | | | |
|---|---|---|---|
| **BK Administration** | | | |
| Attorney Fees | $ 20,000.00 | $ 10,000.00 | $ 10,000.00 |
| Trustee Fees - Base Fee | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 |
| Trustee Fees - 5% | $ 3,500.00 | $ 20,000.00 | $ 20,000.00 |
| **Total** | **$ 25,000.00** | **$ 31,500.00** | **$ 31,500.00** |
| **TOTAL EXPENSE** | **$ 5,124,063.56** | **$ 5,130,563.56** | **$ 5,123,629.90** |

**TOTALS**

| **Plan Year** | **1** | **2** | **3** |
|---|---|---|---|
| NET INCOME | $ 335,536.41 | $ 664,572.82 | $ 671,970.07 |
| RETAINED INCOME | $ 335,536.41 | $ 336,000.00 | $ 336,000.00 |
| PROJECTED NET DISPOSABLE INCOME PAYMENT TO UNSECURED CREDITORS | $ - | $ 328,572.82 | $ 335,970.07 |

Turnage Farms 26-10275-357
Liquidation Analysis
Chapter 12

**Exhibit B**

| | Value | Liquidation Expense | Exemptions | Net | PMSI | Blanket Liens/2nd | Liquidation Value |
|---|---|---|---|---|---|---|---|
| FSBT Checking Acct | $ 5,000.00 | $ - | | $ 5,000.00 | $ (5,000.00) | | $ - |
| 2x - Fast 8318 Liq. Fert. App. | $ 75,000.00 | $ (5,250.00) | | $ 69,750.00 | $ (69,750.00) | | $ - |
| JDF securd equipment | $ 4,165,000.00 | $ (291,550.00) | | $ 3,873,450.00 | $ (3,873,450.00) | | $ - |
| Ag Direct secured equipment | $ 50,000.00 | $ (3,500.00) | | $ 46,500.00 | $ (13,300.00) | $ (33,200.00) | $ - |
| 1998 Valley Pivot | $ 50,000.00 | $ (3,500.00) | | $ 46,500.00 | $ (46,500.00) | | $ - |
| Farm Equipment | $ 1,601,900.00 | $ (112,133.00) | | $ 1,489,767.00 | | $ (1,489,767.00) | $ - |
| 18 Pete & 22 CTSI | $ 41,000.00 | $ (2,870.00) | | $ 38,130.00 | $ (38,130.00) | | $ - |
| Vehicles & Trailers | $ 226,800.00 | $ (15,876.00) | | $ 210,924.00 | | | $ 210,924.00 |
| Oregon County - 39 acres | $ 39,000.00 | $ (2,730.00) | | $ 36,270.00 | | | $ 36,270.00 |
| Farm Land - 112 acres | $ 672,000.00 | $ (47,040.00) | | $ 624,960.00 | $ (624,960.00) | | $ - |
| Trustee Held Funds | $ - | $ - | | $ - | | | $ - |
| | $ 6,925,700.00 | $ (484,449.00) | $ - | $ 6,441,251.00 | $ (4,671,090.00) | $ (1,522,967.00) | $ 247,194.00 |

| | | | | |
|---|---|---|---|---|
| Priority - Trustee Fees - Chapter 7 | | | | |
| First $5,000 | 0 | 5,000 | 25% | $ (1,250.00) |
| $5,000 - $50,000 | 5,000 | 50,000 | 10% | $ (4,500.00) |
| $50,000 - $1,000,000 | 50,000 | 247,194 | 5% | $ (9,859.70) |
| $1,000,000 + | 0 | 0 | 3% | $ - |
| Priority Unsecured Claims as of Effective Date of Plan | | | | |
| IRS | | | | $ - |
| Unpaid approved Ch. 12 attorney fees | | | | $ - |
| Unpaid accrued Ch. 12 attorney fees | | | | $ (30,000.00) |
| Hypothetical Ch. 7 Liquidation Priority Expenses | | | | |
| Income Taxes on Sale of Assets - Federal and State (only items not de-prioritized in Ch. 12) | | | | $ (56,949.48) |
| Accountant/Tax Preparer Fees Chapter 7 Tax Planning and Preparation | | | | $ (2,500.00) |
| Attorney Fees Chapter 7 | | | | $ (7,500.00) |
| **Net available to general unsecured creditors** | | | | **$ 134,634.82** |

Turnage Farms 26-10275-357 **Exhibit C**

Hypothetical Ch. 7 Income Tax Calculation

| Chapter 12 | Value | Liquidation Expense | Liquidation Value | Ch. 7 Trustee Ab. or Liq. | Does proposed restructuring de-prioritize? | Included in Tax Calculatioı |
|---|---|---|---|---|---|---|
| FSBT Checking Acct | $ 5,000.00 | $ - | $ 5,000.00 | Abandon | No | No |
| 2x - Fast 8318 Liq. Fert. App. | $ 75,000.00 | $ (5,250.00) | $ 69,750.00 | Abandon | No | No |
| JDF securd equipment | $ 4,165,000.00 | $ (291,550.00) | $ 3,873,450.00 | Abandon | No | No |
| Ag Direct secured equipment | $ 50,000.00 | $ (3,500.00) | $ 46,500.00 | Abandon | No | No |
| 1998 Valley Pivot | $ 50,000.00 | $ (3,500.00) | $ 46,500.00 | Abandon | No | No |
| Farm Equipment | $ - | $ - | $ - | Abandon | No | No |
| 18 Pete & 22 CTSI | $ 41,000.00 | $ (2,870.00) | $ 38,130.00 | Abandon | No | No |
| Vehicles & Trailers | $ 226,800.00 | $ (15,876.00) | $ 210,924.00 | Liquidate | No | Yes |
| Oregon County - 39 acres | $ 39,000.00 | $ (2,730.00) | $ 36,270.00 | Liquidate | No | No |
| Farm Land - 112 acres | $ 672,000.00 | $ (47,040.00) | $ 624,960.00 | Abandon | No | No |
| Trustee Held Funds | $ - | $ - | $ - | Abandon | No | No |
| | $ 5,323,800.00 | $ (372,316.00) | | | | |

Accountant Assumptions for calculating Hypothetical Ch. 7 Income Taxes

1. Tax calculations are based solely on items for which 1. a Ch. 7 Trustee would Liquidate, 2. the proposed restructuring does NOT de-prioritize, and 3. the tax code would include. The far right column is a true representation of these 3 factors and represents the items included in the tax calculation.

2. Assumed 2026 farm income and expenses were "break even"

3. Other 2026 income estimated as:

4. Calculations made as though sales took place in 2026.

| | |
|---|---|
| Federal income tax | $ 46,403.28 |
| Missouri income tax | $ 10,546.20 |
| Total tax | $ 56,949.48 |

EXHIBIT
D

DeWitt
Auction Company

220 DeWitt Drive • Sikeston, Missouri 63801

**APPRAISAL ON THE FOLLOWING FOR**
***PATRICK TURNAGE***

**July 27, 2026**

*Appraisal on the following list based on current market values.*

| DESCRIPTION | | VALUE |
|---|---|---|
| HNB- 2024 Fast Ag Solutions Model 8300 Liquid Fertilizer Applicators SN#: 8318-11338-0224 | HNB Claim No. 22 | $ 37,500 |
| HNB- 2024 Fast Ag Solutions Model 8300 Liquid Fertilizer Applicators SN#: 8318-11339-0224 | HNB Claim No. 22 | $ 37,500 |
| CNH- 2023 Case IH 110C Tractor SN: 50569, Loader, 165 hrs. | | $ 75,000 |
| CNH- 2024 Case IH 465 Speed Till SN: 05450 | | $ 50,000 |
| JDF- 2021 JD 8R 280 Tractor SN: 186918, 1689 hrs. | JD Claim No. 10 | $ 220,000 |
| JDF- 2021 JD 8R 410 Tractor SN: 182826, 1985 hrs. | JD Claim No. 12 | $ 250,000 |
| JDF- JD 8RX 340 Tractor SN: 806628, 999 hrs. | JD Claim No. 21 | $ 300,000 |
| JDF- 2025 JD CP770 Picker SN: 250344, 132 fan/192 eng. hrs. | JD Claim No. 20 | $ 775,000 |
| JDF- 2025 JD CP770 Picker SN: 250345, 189 fan/272 eng. hrs. | JD Claim No. 19 | $ 775,000 |
| JDF- 2025 JD CP770 Picker SN: 250323, 188 fan/271 eng. hrs. | JD Claim No. 18 | $ 775,000 |
| JDF- JD Sprayer 612R SN: 246230, 992 hrs. | JD Claim No. 13 | $ 250,000 |
| JDF- JD Sprayer 612R SN: 256105, 485 hrs. | JD Claim No. 17 | $ 275,000 |
| JDF- 2022 JD DB60 Planter SN: 795123, 9026 acres | JD Claim No. 11 | $ 125,000 |
| JDF- JD 1725C Planter SN: 810140, 3584 acres | JD Claim No. 15 | $ 140,000 |
| JDF- JD 1725C SN: 810115, 3839 acres | JD Claim No. 14 | $ 140,000 |
| JDF- JD 1725C Planter SN: 810141, 3364 acres | JD Claim No. 16 | $ 140,000 |

Ph.: 573-471-1060
Fax: 573-471-1068

www.dewittauction.com
info@dewittauction.com

| | |
|---|---|
| TOTAL | $ 4,365,000 |

*Gary DeWitt*
*Gary DeWitt, President*
*DeWitt Auction Company, Inc.*

*Jack Holifield*
*Jack Holifield, Vice President*
*DeWitt Auction Company, Inc.*

*Brandon DeWitt*
*Brandon DeWitt, Vice President*
*DeWitt Auction Company, Inc.*